NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
30500
25-MAY-2011
08:24 AM**

NO. 30500

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ORLANDO V. PECPEC, Defendant-Appellant.


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CRIMINAL NO. 09-1-2378)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Ginoza, J.; and
Reifurth, J. concurring in part and dissenting in part)

Defendant-Appellant Orlando V. Pecpec ("Pecpec")
appeals from the Amended Judgment of Conviction and Sentence
("Judgment"), filed on June 4, 2010, in the Family Court of the
First Circuit ("Family Court").[1] After a jury trial, the Family
Court convicted Pecpec of nineteen counts of Violation of an
Order for Protection ("Protective Order") (Counts 7-25 of the
Complaint), in violation of Hawaii Revised Statutes ("HRS")
§ 586-11 (Supp. 2009). The Family Court sentenced Pecpec to a
one-year term of imprisonment for each of Counts 7-12 and 14-25,
with terms to run concurrently. With respect to Count 13, the
Family Court sentenced Pecpec to one year of imprisonment
consecutive to the other sentences.

On appeal, Pecpec argues that the Family Court erred
by: (1) violating his constitutional right to a unanimous verdict

_____

[1] The Honorable Edward H. Kubo, Jr. presided.

by failing to specifically instruct the jury that its verdict must be unanimous as to each count of the Complaint; and (2) sentencing him to a consecutive term of imprisonment in Count 13 without giving the jury a specific unanimity instruction and unilaterally assigning to Count 13 conduct described in State's exhibit 17. Pecpec asks that we set aside his conviction and remand this case for a new trial on Counts 7-25. Alternatively, if the convictions are allowed to stand, he asks that we remand the case for concurrent sentencing as to Count 13.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Pecpec's points of error as follows:

(1) Pecpec does not identify if, or where in the record, he objected below to the Family Court's alleged failure to issue a specific unanimity instruction; consequently, we review for plain error. State v. Arceo, 84 Hawai'i 1, 33, 928 P.2d 843, 875 (1996). We conclude that there was no error by the Family Court in not giving a specific unanimity instruction in this case.

The jury was afforded sufficient guidance to know what it had to conclude in order to convict on the multiple counts asserted against Pecpec, and there is no genuine possibility of jury confusion given the record in this case. The prosecution presented evidence and asserted throughout this case that Pecpec committed a total of twenty-five acts (voice mails or texts) which were the basis for the twenty-five counts of violating a Protective Order that prohibited Pecpec from contacting the complainant, his ex-wife.

Counts 1-6 asserted that Pecpec violated the Protective Order on October 19, 2009. Count 7 asserted that Pecpec violated the Protective Order on October 22, 2009. Counts 8-15 asserted that Pecpec violated the Protective Order on November 6, 2009. Count 16 asserted that Pecpec violated the Protective Order on November 7, 2009. Count 17 asserted that Pecpec violated the

Protective Order on November 8, 2009. Counts 18-22 asserted that Pecpec violated the Protective Order on November 6, 2009. Counts 23-25 asserted that Pecpec violated the Protective Order on November 7, 2009.

In the presentation of the State's evidence, the complaining witness testified that she had saved <u>voice mails</u> that Pecpec had left on her office phone. The voice mails were recorded onto CD's that were admitted into evidence and played for the jury, as follows: on October 22, one voice mail (exhibit 23); on November 6, 2009, eight voice mails (exhibits 15 through 22); on November 7, 2009, one voice mail (exhibit 14); on November 8, 2009, one voice mail (exhibit 13). Each of the CD's were marked with the date of the voice mail.

The complaining witness further testified that Pecpec had sent her <u>text messages</u> on her cell phone, which she photographed with a digital camera and had enlarged. The photographs of the text messages were admitted into evidence and published to the jury, as follows: on November 6, 2009, five text messages (exhibits 5 through 9); and on November 7, 2009, three text messages (exhibits 10 through 12). Each of the photographs of the text messages was marked with the date of the text message.

There were no exhibits admitted into evidence pertaining to contacts by Pecpec on October 19, 2009, which were charged in Counts 1-6.

During the defense case, the prosecution's cross-examination of Pecpec focused on and elicited testimony about the voice mails that had already been played in court and one particular text message. When the deputy prosecutor asked about the voice mails that had been played in court, Pecpec affirmed that he had heard the voice mails played in court, that it was his voice on the voice mails, and that those were voice mails he had left for complainant. The deputy prosecutor also questioned Pecpec about a text message reflected in exhibit 5, with Pecpec admitting that he wrote it and sent it to complainant on

3

November 6, 2009. Although Pecpec, on direct examination by his counsel, testified variously as to whether he had contacted the complainant as she asserted, the prosecution limited its cross-examination of Pecpec to alleged contacts supported by the exhibits.

For each of the twenty-five counts, the Family Court instructed the jury as to the date of the alleged offense and the elements the prosecution was required to prove. The Family Court further instructed the jury that their verdict must be unanimous in two ways. First, the Family Court gave the following instruction:

> You must not reveal to the Court or to any other person how the jury stands numerically or otherwise until you have reached a <u>unanimous verdict</u> and it has been received by the Court.
>
> A verdict must be -- must represent the considered judgment of each juror. In -- and in order to return a verdict, <u>it is necessary that each juror agree thereto</u>. In other words, <u>your verdict must be unanimous</u>.

(Emphasis added). Second, the Family Court instructed, <u>separately as to each count</u>, that: "you may bring in either one of the following verdicts: 1) not guilty, or 2) guilty as charged of Violation of an Order for Protection. <u>Your verdict must be unanimous</u>." (Emphasis added).

In closing argument, the prosecution tied the twenty-five counts to the twenty-five alleged incidents of Pecpec contacting complainant.

> Okay. So we're talking about 25 counts of Violation of an Order for Protection. We know that they fall into two categories -- voice mails and text messages. The voice mails would be your first 17 counts, Counts [1] to [17]. The text messages would be your next eight counts, Counts [18] to [25].
>
> Now, let's look first at the voice mails. The voice mails are grouped in terms of the dates of incident. Counts [1] through [6] are from October 19, 2009; Count [7] is from October 22; Counts [8] to [15] are November 6; Count [16] from November 7; and Count [17] is from November 8.
>
> Now, you listened to the voice mails. These voice mails are also associated with these dates. Exhibit 23 is the voice mail from October 22; Exhibit[s] 15 to 22 are from November 6; Exhibit 14 is from November 7; Exhibit 13 is from November 8.

> Switching now to the text messages. Counts [18] to [25], they are also grouped in terms of the dates of incident. Counts [18] to [22] are from November 6; Counts [23] to [25] are from November 7. For each of these text messages there are exhibits. Exhibits 5 through 9 are the text messages from November 6; and Exhibits 10 to 12 are the text messages from November 7.

After deliberations, the jury returned a verdict finding Pecpec guilty as to Counts 7-25. Pecpec was found not guilty with respect to Counts 1-6, in other words for each count alleged to have occurred on October 19, 2009 for which there had been no exhibits admitted.

Relying on Arceo, Pecpec contends that each of the counts could be supported by numerous contacts and that "[i]t cannot be assumed that the Jury took each exhibit identified by number, date and time, and unanimously ascribed it to a particular count of the complaint." He thus argues that either the prosecution was required to elect the specific act upon which it was relying (for each count) or the Family Court was required to instruct that each juror must agree that the same criminal act has been proved beyond a reasonable doubt (for each count).

The decision in Arceo addressed a significantly different situation, and the ruling and reasoning in that case do not suggest that a specific unanimity instruction would be required in the straightforward circumstances of this case. In Arceo, the defendant was charged with two counts, one count of sexual assault in the third degree (sexual contact) and one count of sexual assault in the first degree (sexual penetration). In its presentation of the evidence, the prosecution elicited testimony from the victim about numerous incidents of sexual contact and numerous incidents of sexual penetration. After reviewing decisions from other states and a line of federal cases, the Hawai'i Supreme Court concluded that:

> when separate and distinct culpable acts are subsumed within a single count charging a sexual assault-any one of which could support a conviction thereunder-and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at

5

> or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, *i.e.*, an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

84 Hawai'i at 32-33, 928 P.2d at 874-75 (emphasis added). As the Hawai'i Supreme Court further explained in State v. Valentine, 93 Hawai'i 199, 208, 998 P.2d 479, 488 (2000):

> two conditions must converge before an *Arceo* unanimity instruction, absent an election by the prosecution, is necessary: (1) at trial, the prosecution adduces proof of two or more separate and distinct culpable acts; and (2) the prosecution seeks to submit to the jury that only one offense was committed.

Unlike in Arceo, in the instant case there was a separate count charged for each alleged incident in which Pecpec contacted the complainant, either by voice mail or text message.

Other Hawai'i cases are similarly distinguishable. In State v. Mundon, 121 Hawai'i 339, 219 P.3d 1126 (2009), the defendant was charged with two counts of terroristic threatening in the first degree (TT1), the prosecution argued to the jury that there were two incidents where the defendant had threatened the complainant, but the jury convicted on only one count of TT1. The Hawai'i Supreme Court concluded that, because a specific unanimity instruction was not given, a specific act was not tied to a specific count, and the defendant was acquitted on one of the TT1 counts,

> there is a "genuine possibility" that different jurors concluded that Mundon committed different acts. In other words, it is possible that some jurors concluded that Mundon committed TT1 when he used the knife in the truck and others concluded that Mundon committed such offense when Mundon and the complainant were struggling with the knife in the sand.

Id. at 354-55, 219 P.3d at 1141-42.

Similarly, in State v. Auld, 114 Hawai'i 135, 157 P.3d 574 (App. 2007), this court held that the defendant was entitled to a specific unanimity instruction where the State contended and presented evidence that the defendant had threatened different individuals and in one of the counts it was alleged that

defendant had threatened "Salina, Kiana 'and/or' Liane." Id. at 143, 157 P.3d at 582 (emphasis added). In that circumstance, without an instruction requiring the jury to agree as to the person(s) threatened, the jury could have convicted based on different findings as to who had been threatened.

In the case at bar, because the prosecution developed its evidence and argued to the jury such that each alleged contact by Pecpec supported a count against him on a particular date, there is no "genuine possibility" that jurors concluded that Pecpec committed different underlying acts to support the convictions. The constitutional right articulated in Arceo, Mundon and Auld concerns whether there is unanimous agreement by the jurors as to the conduct committed by the defendant to support conviction. In the context of this case, that right has not been violated. In Arceo, the Hawai'i Supreme Court relied in part on a line of federal cases arising out of United States v. Echeverry, 719 F.2d 974 (9th Cir. 1983). In Echeverry, although the facts in that case required a specific unanimity instruction, the Ninth Circuit noted that "in a routine case when a jury is presented with multiple counts or schemes," a general instruction to the jury that their verdict had to be unanimous could be sufficient. Id. at 974. See also United States v. Anguiano, 873 F.2d 1314, 1319 (9th Cir. 1989) (holding that specific unanimity instruction was not required where there was no indication of jury confusion and defendant's assertion of jury confusion was based on mere speculation); United States v. Wright, 742 F.2d 1215, 1222 (9th Cir. 1984) (holding that there was nothing in the record to suggest "a genuine possibility of jury confusion[]" and "[b]ecause there is no showing that this case was unique, the standard unanimity instruction was adequate."), overruled on other grounds by United States v. Powell, 469 U.S. 57 (1984); United States v. Ferris, 719 F.2d 1405, 1407 (9th Cir. 1983) (stating that "[i]n the ordinary case, . . . the general instruction that a unanimous verdict is required will suffice.")

7

Here, with respect to the dates on which multiple counts were charged for Counts 7-25, there was a one to one relationship between the number of counts and the number of exhibits reflecting the prohibited contacts. The prosecution explained this relationship, without contradiction, in closing argument. Most significantly, for Counts 7-25, the jury convicted on all the counts for dates on which multiple counts were charged. For this to occur, the jury must have unanimously found that Pecpec engaged in each of the prohibited contacts reflected in the exhibits. Accordingly, Pecpec is not entitled to any relief on his claim that the Family Court erred in failing to give a specific unanimity instruction.

That said, we note that the specific unanimity issue raised in this appeal stems from the manner in which the prosecution chose to charge the alleged offenses. In particular, for the dates on which multiple counts were charged, the prosecution did not include details in the charging language that would distinguish one count from another. Given the evidence presented, that would have been easy for the prosecution to do. The prosecution could have distinguished the counts by alleging the time in which the voice mails and text messages were received or the content of the voice mails and text messages. Charging in this fashion would have eliminated any claim or issue regarding specific unanimity.

(2) Pecpec's second point of error is also reviewed for plain error because he does not point to where in the record he objected to consecutive sentencing for Count 13, and it does not appear that any such objection was made. Pecpec argues that, without a specific unanimity instruction, the Family Court erred when it "unilaterally assigned to this particular count, the conduct portrayed in State's Exhibit 17." Pecpec's arguments are unavailing. First, the Family Court did not "unilaterally" assign exhibit 17 to Count 13. Rather, the Family Court determined that Count 13 was based on exhibit 17 after conferring with counsel for both the prosecution and the defense, and

8

defense counsel did not object but simply indicated he did not know which count related to exhibit 17 because he did not have his complete file. Second, similar to our analysis as to Pecpec's first point of error, it is clear from the record in this case that the voice mail left on November 6, 2009, as contained in exhibit 17, was an act by Pecpec upon which the jury unanimously agreed to convict. Not only were the convictions for contacts on November 6, 2009 supported by an equal number of exhibits submitted by the prosecution, but as noted above, Pecpec admitted on cross-examination that he had left each of the voice mails that had been played in court, which included exhibit 17. We find no merit in Pecpec's second point of error.

Therefore,

IT IS HEREBY ORDERED that the June 4, 2010 Amended Judgment of Conviction and Sentence filed in the Family Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, May 25, 2011.

On the briefs:

Stuart N. Fujioka
for Defendant-Appellant

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

9